UNITED STATES v. SEVENTY-SEVEN ACRES OF LAND, MORE OR LESS, LOCATED IN MOBILE COUNTY, ALABAMA, et al.

Civ. No. 360.

United States District Court
S. D. Alabama, S. D.

Jan. 6, 1950.

Percy C. Fountain, United States Attorney, Mobile, Ala., for petitioner.

Gaillard & Gaillard, Mobile, Ala., for defendant Blakeley Island Realty Company, Inc.

McDUFFIE, District Judge.

The issue presented here involves two parcels of real estate on Blakeley Island on the east bank of Mobile River opposite the city of Mobile and north of the shipyard of the Alabama Dry Dock and Shipbuilding Company.

In order to get a complete picture, this court believes it necessary to set forth briefly and chronologically the steps heretofore taken, involving these parcels, No. 2 and 5, the amount of compensation for the use and occupancy of which is here the basic issue.

On November 21, 1942, the government filed petition at the request of its agency, the Maritime Commission, seeking to condemn the fee simple title to eight parcels of land, among which were parcels No. 2 and 5, for the erection of housing facilities for shipyard workers to further the successful prosecution of the war, stating that certain and adequate provision had been made for the payment of just compensation for the taking of the lands sought to be condemned, and praying for the appointment of commissioners to appraise and fix the value of said lands and for an order of immediate possession, which order for immediate possession was granted on the day the petition was filed.

On December 31, 1942, an amendment to the petition for condemnation was filed, for the purpose of adding ten parcels, which petition was followed on the same date with an order for immediate possession as to the additional parcels.

On April 21, 1943, an amended petition for condemnation was filed in which the estate sought to be condemned was "a lease for a term of one year, beginning November 21, 1942, with the right of the Maritime Commission to renew from year to year at the same rental and upon the same terms and conditions *for the period of the existing national emergency and three years thereafter,*" etc., praying again for the appointment of commissioners to appraise, and for an order of immediate possession.

In the meantime, the government had already taken possession on the initial order of the court, under date of November 21, 1942, and the government was, on April 21, 1943, and still is occupying the two parcels about which this controversy has arisen.

On the aforesaid amended petition seeking the condemnation of a leasehold interest, in lieu of the fee simple title, an order of immediate possession was entered by the court on April 21, 1943.

Before any steps were taken in this court under the appropriate condemnation statutes to fix a reasonable rental value for the use and occupancy of Parcels 2 and 5, the then owner of said property, Augustine Meaher, Jr., and his wife, voluntarily entered into a leasehold contract with the United States of America, acting by and through the United States Maritime Commission, on August 12, 1943, for the nominal consideration of $1.00, as annual rental for Parcel No. 2 and No. 5 (together with Parcel No. 21 and No. 24, with which latter parcels the court is not now immediately concerned). The term of this lease was

"the exclusive use and occupancy of the property for a period ending one year from the 21st day of November 1942, and at the election of the United States Maritime Commission for additional yearly periods thereafter *during the present states of war and during three years thereafter,* which election shall be automatic unless the Government shall give the lessor written notice of its intention not to renew, at least 60 days prior to the end of the original term of this lease or any annual renewal thereof."

On March 4, 1949, the Blakeley Island Realty Company, Inc., filed its petition or claim alleging that it had acquired the title to Parcels No. 2 and No. 5 from Meaher by deed dated January 14, 1946, and praying the court either to decree that the government of the United States had no further right, title or interest in and to the property or the improvements thereon, or to order the appointment of commissioners to determine the reasonable annual rental to be paid to the petitioner for the term that petitioner had owned said property.

To this petition or claim of the present owners of Parcels 2 and 5, the government (original petitioner in the cause) filed its reply, and asked judgment for the sum of one dollar per year as just and reasonable compensation for the use and occupancy of said property, in accordance with the terms of the original contract for one dollar per annum, setting forth in its reply that the purchaser, Blakeley Island Realty Company, Inc., acquired the property subject and subordinate to the said lease and that it was bound by the terms thereof, and that the period referred to in said lease as "during the present states of war and during three years thereafter" had not expired; that neither the "present states of war" as then existed, nor the national emergency as existed on April 21, 1943, had been terminated either by the President of the United States or the Congress of the United States.

There is no dispute that the government retains the power to continue its use and occupancy of Parcels 2 and 5 for public purposes, but the present holder of the title thereto (which was acquired with knowledge of the original lease for the nominal consideration of $1.00) contends that the leasehold contract was terminated in August 1948 (three years after the cessation of the actual hostilities existing at the time the contract was signed), or else, no rent having been paid to claimant, the leasehold contract is void, and the government would owe to the petitioner a reasonable rental for said property during the term the United States has occupied and used said property.

Thus the issue presented to this court is whether or not the contract between the United States of America, acting by and through the United States Maritime Commission, and Augustine Meaher, Jr., lessor, terminated under the terms of the contract at the end of the period of three years after the cessation of actual warfare or whether the contract is still in force and effect, and the government has a right to continue its use and occupancy until by treaty or by proclamation of the President the national emergency is ended and three years thereafter have passed.

To the reply of the government, the Realty Company has filed demurrer, attacking the reply on the ground that the original leasehold contract entered into on August 12, 1943, for $1.00 per annum, as quoted in the government's rely, is ended under the very terms of the contract, which was entered into "during the present states of war and during three years thereafter," in lieu of the terms and conditions provided for in the condemnation proceeding for use and occupancy of the property for the "period of the existing national emergency and three years thereafter."

██ In passing on the question raised by the demurrer to the reply of the government, the court is called upon to interpret the intention of the parties to the contract, at the time of the signing thereof. This court is of the opinion that is was not the intention of the owner of the title to the parcels here involved nor of the government itself that the property be used and occupied for an indefinitely prolonged period without

compensation or even for the nominal compensation of $1.00.

The government has had the use and occupancy of these two parcels without compensation to the owner (together with the use and occupancy of other parcels condemned in this same proceeding, for which fair and reasonable compensation has been paid) from the date of the original order for immediate possession, and is still using and occupying these two parcels. Indeed, the present owner complains that even the $1.00 per annum nominal compensation has never been paid for this use and occupancy. However, since the original owner evidently considered the gift of the use and occupancy of these parcels as a contribution on his part to the war effort, this phase of the challenge of the contract is not considered of serious import.

■ No one knows when the national emergency will end, if ever, and this court is of the opinion that the use and occupancy of the citizen's property after three years following the cessation of actual hostilities without adequate compensation therefor, is tantamount to the taking by the sovereign of its citizen's property without due process of law. It would be most unreasonable to assume that any citizen for so nominal a consideration intended to grant the use and occupancy of his property for an indefinite period, especially when the indefiniteness. of that period depends upon the mere fiat or order of the other party to the contract, the government or one of its agencies. It is further reasonable to assume that the purchasers of this property, even though they had notice, had a right to believe at the time of the purchase that, although the government might have the power to continue by condemnation the use and occupancy thereof, it would not do so indefinitely without reasonable and just compensation, in conflict with the fundamental principles of this republic in that every subject of the sovereign is entitled to reasonable compensation for his property when taken by the sovereign.

■ Therefore this court is of the opinion that the demurrer raising the question of the cancellation or termination of the contract should be sustained, and that the contractual leasehold interest of the government terminated at the end of the three-year period following the presidential proclamation of the cessation of hostilities of World War II, effective twelve o'clock noon, December 31, 1946.

■ This court is further of the opinion that reasonable rental value should be fixed and paid to the present holder of the title for the use and occupancy by the government of Parcels 2 and 5 from and after December 31, 1949, so long as the government's agency sees fit to continue use and occupancy for the general welfare of the public.

The two cases of Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881, and Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596, were cited by the government in its contention that this court had no power to declare the termination of a national emergency or the ending of "the present states of war." The Ludecke v. Watkins case involved a challenge of the validity of a removal order under the Alien Enemy Act of 1798, 1 Stat. 570. In Woods v. Miller Co., the constitutionality of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., was in question, going to the power of Congress to enact remedial legislation for conditions growing out of war. In the opinion of this court these cases involving the welfare and perpetuity of the nation cannot be used as precedents in a case involving the rental contract of two parcels of real estate which had been used for war. purposes, that is to say, as part of a housing project for shipyard workers, and are still being used by the government as part of a housing project, without compensation to the owner of the title, more than three years after actual open warfare with Germany, Japan, and their allies, has ceased.

This court, however, is not called upon to decide "that a war though merely formally kept alive had in fact ended", which the Supreme Court has termed in Ludecke v. Watkins, supra [335 U.S. 160, 68 S.Ct. 1433], "a question too fraught with gravity even to be adequately formulated when not

compelled"; but is confronted with and is of the opinion that it has the power to interpret the contract and to ascertain the intention of the parties thereto, giving consideration to the times, the terms, and the conditions under which the contract was entered into. Augustine Meaher, Jr., the owner of the title at the time of the signing of the original lease for a nominal consideration, as well as the Blakeley Island Realty Company, to whom Mcaher sold all his right, title and interest, had every reason to assume that the sovereign would not insist upon the use and occupancy of the property without remuneration through an indefinite extension of time, even though, as to the Realty Company, the contract being of record, the purchaser had notice of the agreement between Meaher and the government.

The appropriate order sustaining the demurrer to the reply of the government is being entered this date.